The UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, Petitioner,

v.

Kia BAILEY and Larry Bailey, Respondents.

No. 08–0419.

Supreme Court of Texas.

Argued Oct. 7, 2009.

Decided Jan. 21, 2011.

Greg W. Abbott, Attorney General of Texas, Kent C. Sullivan, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Nelly R. Herrera, Office of the Attorney General, Tort Litigation Division, Matthew Jason Warner, Asst. Attorney General, Michael P. Murphy, Asst. Solicitor General, Clarence Andrew Weber, Kelly Hart & Hallman LLP, James C. Ho, Solicitor General of Texas, Danica Lynn Milios, Office of the Attorney General, Austin, TX, for The University of Texas Health Science Center at San Antonio.

Steven E. Aldous, Robert Ray Varner Jr., Braden, Varner & Aldous, P.C., Dallas, TX, for Kia Bailey.

Justice HECHT delivered the opinion of the Court.

Section 101.106(f) of the Texas Tort Claims Act allows a plaintiff who has sued a government employee in what is considered to be his official capacity to avoid dismissal of the action by substituting the governmental employer as a defendant.[1] The question in this case is whether action against the substituted defendant is barred after limitations has run. The court of appeals answered no.[2] We agree, though for somewhat different reasons.

---

**1.** Tex. Civ. Prac. & Rem.Code § 101.106(f).

**2.** 261 S.W.3d 147 (Tex.App.-San Antonio 2008).

On April 15, 2004, Dr. Albert E. Sanders, a clinical assistant professor at the University of Texas Health Science Center at San Antonio, operated on Kia Bailey, age 32, to replace spinal fixation hardware previously implanted to correct for scoliosis that she developed as a child.[3] One of the pedicle screws he inserted broke through the medial wall, injuring the dural sac and impinging the nerves, resulting in a serious neurologic deficit. When Sanders realized what had happened, he notified the Center's risk manager that "an untoward event" had occurred and that Bailey had a potential claim.

Bailey and her husband, respondents here, sued Sanders on a health care liability claim [4] on July 14, 2005, and later added other defendants, but did not sue the Center, Sanders's employer, a governmental unit.[5] The Baileys' petition did not specify whether they were suing Sanders in his official capacity as a government employee or in his individual capacity, but the Attorney General was not served and did not appear as counsel on his behalf.[6] On August 25, 2006, several weeks after limitations had run on the Baileys' claim,[7] Sanders filed a motion asserting that the suit was, by law, against him in his official capacity, and requesting the trial court to order the Baileys to substitute the Center for him as the defendant or suffer dismissal of their action. Sanders based his motion on section 101.106(f) of the Texas Tort Claims Act, which states—with spacing inserted to aid the reader:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and
>
> if it could have been brought under this chapter against the governmental unit,
>
> the suit is considered to be against the employee in the employee's official capacity only.
>
> On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[8]

In response, the Baileys did not contest the first condition—that Sanders had acted within the scope of employment. They argued that he could not invoke the statute

---

**3.** At age five, Bailey's right kidney was removed because of a Wilms tumor. Her radiation therapy led to scoliosis, and at age thirteen, a spinal fusion with instrumentation.

**4.** Tex. Civ. Prac. & Rem.Code § 74.001(a)(13) (" 'Health care liability claim' means a cause of action against a ... physician for treatment ... which proximately results in injury to ... a claimant....").

**5.** State universities and their component entities are governmental units within the meaning of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem.Code § 101.001(3) (" 'Governmental unit' means: (A) this state and all the several agencies of government that collectively constitute the government of this state ...; and (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution."); *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 354 & n. 5 (Tex.2004); *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994); *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976).

**6.** Sanders appears to have been represented by private counsel.

**7.** Limitations ran June 20, 2006. *See* Tex. Civ Prac. & Rem.Code § 74.251(a) (prescribing a limitations period of two years from the date of treatment); *id.* § 74.051(c) (tolling limitations for 75 days following notice of the claim).

**8.** Tex. Civ. Prac. & Rem.Code § 101.106(f).

because he had not established the second—that suit could have been brought under the Act against the Center—by which they meant that their suit was one for which the Act waived the Center's governmental immunity. In construing the second condition as they did, the Baileys relied in part on the court of appeals' decision in *Franka v. Velasquez*, which we

have since reversed.[9] None of their arguments is relevant to the issue that is now before us, and we mention them only in the margin. Important here is that the trial court ordered the suit against Sanders dismissed with prejudice unless the Baileys amended their pleadings to substitute the Center by September 24, 2006, and that the Baileys complied.[10]

9. *Franka v. Velasquez*, 216 S.W.3d 409 (Tex. App.-San Antonio 2006), *rev'd*, 332 S.W.3d 367 (Tex.2011).

10. In response to Sanders' motion, the Baileys argued that while they had certainly *alleged* that Kia Bailey's injuries were caused by the use of tangible personal property—a pedicle screw—and thus fell within the Act's waiver of immunity, their allegations had not been *proved*, and their claim might yet be held to be barred. *See* TEX. CIV. PRAC. & REM.CODE § 101.021(2) ("A governmental unit in the state is liable for ... personal injury and death [proximately] caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."). The Baileys also argued that the record did not establish whether the Act's pre-suit notice requirement had been met. *See id.* § 101.101 ("(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. ... (c) The notice requirements ... do not apply if the governmental unit has actual notice ... that the claimant has received some injury...."). Finally, the Baileys argued that if the Center could no longer be sued without its consent, *see id.* § 101.106(b) ("The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents."), then section 101.106(f) violated the Open Courts provision of the Texas Constitution. TEX CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").
      After the Center answered the suit, the trial court issued an order dismissing Sanders and

severed it from the case to make it final. The Baileys appealed. While the appeal was pending, the Baileys and the Center filed with the trial court an agreement under Rule 11, TEX.R. CIV. P., that:
"1. At the time of Dr. Albert Sanders' surgery on Kia Bailey on April 15, 2004, and all times thereafter concerning her care by Dr. Sanders, he was a paid, full time employee of Defendant University of Texas Health Science Center at San Antonio acting in the scope of his employment;
"2. Defendant University of Texas Health Science Center at San Antonio agrees not assert to its defense of Six (6) months notice under § 101.101(c) Texas Tort Claims Act; and
"3. In their lawsuit, Plaintiffs have plead a viable use of tangible property claim against Defendant University of Texas Health Science Center at San Antonio."
The basis for paragraph 2 appears to have been Sanders' notice to the Center's risk manager shortly after Bailey's surgery. *See also Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez–Arancibia*, 324 S.W.3d 544, 550 (Tex.2010) (concluding that a physician's report to a medical center's risk manager, under the circumstances, provided actual notice of a patient's claim). Notwithstanding the parties' agreement that the Act's pre-suit notice requirement was satisfied, the court of appeals held that section 101.106(f) requires substitution of a government defendant even if suit against it is barred for lack of pre-suit notice. *Bailey v. Sanders*, 261 S.W.3d 153, 157 (Tex.App.-San Antonio 2008). Although the Baileys' response to Sanders' motion had not mentioned limitations as an impediment to substitution, the court held that a health care liability claim may be brought under the Act, within the meaning of section 101.106(f), even if barred by limitations, because the limitations provision is not part of

After the Center answered, the Baileys moved for partial summary judgment that their amended pleading substituting the Center, filed after limitations had run, related back to their original petition filed against Sanders and was therefore timely. The Center filed a cross-motion contending that the relation-back doctrine does not apply to the addition of a new party, and in any event, the statute of limitations for health care liability claims expressly applies "[n]otwithstanding any other law",[11] which includes the relation-back doctrine. Therefore, the Center argued, the Baileys' claim against it was barred by limitations. The Center did not contend that it had been prejudiced by the delay in being substituted for Sanders. The trial court granted the Center's motion, dismissed the Center from the case, and severed the order, making it final.

The court of appeals reversed.[12] It reasoned that even though the Baileys had sued Sanders in his individual capacity,[13] the Center "had actual knowledge of the Baileys' claim"[14] and "was not misled about the claim or disadvantaged by its substitution".[15] Because "[t]he purpose of limitations [was] served in this case",[16] the court concluded that the relation-back doctrine should apply. Moreover, the court

continued, applying the doctrine was necessary "to fulfill the purpose of section 101.106(f)".[17] Since the statute imposes no deadline for the employee to file a motion,

> a defendant may effectively bar the plaintiff's claims by filing a motion under section 101.106(f) after the limitations period. A defendant would be rewarded for dilatory conduct and the plaintiff penalized despite complying with the statutory requirements. We find great difficulty in accepting the notion that the Legislature intended this result.[18]

We granted the Center's petition for review.[19]

The statute of limitations for health care liability claims states in pertinent part: *"Notwithstanding any other law ...*, no health care liability claim may be commenced unless *the action* is filed within two years" from the subject incident.[20] The Center argues that the relation-back doctrine is "any other law" and therefore cannot apply. But we stated in *Chilkewitz v. Hyson* that the opening phrase of the statute forecloses the application of only those laws that "extend[ ] the time within which a health care liability claim [can] be commenced".[21] There, we held that the statute did not preclude the application of Rule 28 of the Texas Rules of Civil Proce-

---

the Act. *Id.* The court held that section 101.106(b) could not be construed to defeat section 101.106(f) and was not implicated. *Id.* at 158. Finally, the court found no constitutional violation. *Id.* at 159. Consistent with paragraph 3 of the parties' Rule 11 agreement, based on injury resulting from the use of a pedicle screw, the court noted that the Baileys had pleaded "a claim that falls within the ambit of the Tort Claims Act's waiver of immunity." *Id.* at 158. The court affirmed Sanders' dismissal. *Id.* at 159.

11. Tex. Civ. Prac. & Rem.Code § 74.251(a).

12. 261 S.W.3d 147 (Tex.App.-San Antonio 2008).

13. *Id.* at 151.

14. *Id.* at 152.

15. *Id.*

16. *Id.*

17. *Id.* at 153.

18. *Id.*

19. 52 Tex.Sup.Ct.J. 911 (June 26, 2009).

20. Tex. Civ. Prac. & Rem.Code § 74.251(a) (emphasis added).

21. 22 S.W.3d 825, 829 (Tex.1999).

dure, which simply allows an entity to be sued in an assumed name,[22] because it did not affect "when limitations began to run or whether limitations could be tolled or interrupted".[23]

The relation-back doctrine does not affect the running of limitations on a cause of action; rather, it defines what is to be included in "the action" to which limitations applies. The common law took a very narrow view. Professor Wright and his co-authors tell us:

> At common law a litigant had very little freedom to amend the written pleadings other than to correct formal defects and remedy errors of oversight. Thus, an amendment that attempted to introduce a new cause of action or to change the form of the action—for example, from trespass to trespass on the case—would be disallowed.[24]

Our early view was similarly strict. In a 1901 case, we held that in a suit for breach of an express contract, a claim for breach of an implied contract, added by amended pleadings, was barred by limitations.[25] To avoid the bar of limitations, we said, "[i]t is not sufficient that the causes of action be similar in their nature, but they must be essentially identical."[26] The Legislature took a broader approach in 1931, enacting the rule that remains the law today:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.[27]

But narrow or broad, the purpose of the relation-back doctrine is to determine not *when*, but *on what* limitations runs. Because the doctrine does not impede the running of limitations on health care liability claims, it is not, under *Chilkewitz*, an "other law", the application of which is forbidden. Even apart from *Chilkewitz*, because the doctrine determines "the action" that must be timely filed, its application is a matter of necessity.

But contrary to the court of appeals' conclusion, the doctrine does not help the Baileys. We have observed that "[o]rdinarily, an amended pleading adding a new party does not relate back to the original pleading."[28] Misnomer is an exception, misidentification a more limited one.[29] The Baileys fall under neither.

22. TEX.R. CIV. P. 28 ("Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.").

23. *Chilkewitz*, 22 S.W.3d at 830.

24. 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1471 (2010).

25. *Phoenix Lumber Co. v. Houston Water Co.*, 94 Tex. 456, 61 S.W. 707, 709 (1901).

26. *Id.*

27. TEX. CIV. PRAC. & REM.CODE § 16.068, recodifying former TEX.REV.CIV. STAT. ANN art. 5539b, Act approved May 13, 1931, 42nd Leg., R.S., ch. 115, § 1, 1931 Tex. Gen. Laws 194.

28. *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 121 (Tex.2004).

29. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 & n. 1 (Tex. 2009) (per curiam); *see also Stokes v. Beaumont, Sour Lake & W. Ry. Co.*, 161 Tex. 240, 339 S.W.2d 877, 877 (1960) (indicating that the relation-back doctrine as applied to new parties is governed by the common law rather

They did not misname or misidentify their defendant; they sued exactly whom they intended to sue: Sanders, and not the Center. The relation-back doctrine does not save their suit against the Center from its limitations defense.

■ But the Baileys do not need the doctrine. In effect, when the Baileys sued Sanders, they sued the Center. Section 101.106(f) provides that when a government employee is sued for conduct within the general scope of employment, as Sanders was, and the employer could have been sued under the Act—in tort, that is [30]—instead, "the suit is considered to be against the employee in the employee's official capacity only." [31] So while the Baileys may have intended to sue Sanders in his individual capacity, as the court of appeals concluded they did, section 101.106(f) did not allow them that choice. Under the statute, it matters not that the Baileys may not have been aware of Sanders' government employment when they sued him; only the fact of his employment, eventually established, is important. Substitution of the Center as the defendant was not automatic; Sanders was required to file a motion. But the statute does not require a motion for a government employee to be considered to have been sued in his official capacity.

As we have said:

It is fundamental that a suit against a state official is merely "another way of pleading an action against the entity of which [the official] is an agent." A suit against a state official in his official capacity "is not a suit against the official personally, for the real party in interest is the entity." Such a suit actually seeks to impose liability against the governmental unit rather than on the individual specifically named and "is, in all respects other than name, ... a suit against the entity." [32]

A government employee has the same immunity from suit against him in his official capacity as his employer, unless he has acted *ultra vires*. [33] Even then, "the suit is, for all practical purposes, against the state." [34]

Under section 101.106(f), the Baileys' suit against Sanders was, in all respects

than by statute). The federal rule is similar. *See* FED.R.CIV.P. 15(c)(1) ("An amendment to a pleading relates back to the date of the original pleading when: ... (C) the amendment changes the party or the naming of a party against whom a claim is asserted, if [the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.").

30. *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011).

31. TEX. CIV PRAC. & REM.CODE § 101.106(f).

32. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex.2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (additional citations and emphasis omitted) (alterations in original).

33. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex.2009) ("With the limited *ultra vires* exception ..., governmental immunity protects government officers sued in their official capacities to the extent that it protects their employers."); *Koseoglu*, 233 S.W.3d at 844 ("When a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself.").

34. *Heinrich*, 284 S.W.3d at 373.

other than name, a suit against the Center. In requiring a government employer to be substituted on the employee's motion, the statute is silent on whether the employer may complain of prejudice from the delay in being named a party. In this case, the Center has made no such complaint. When the Center was substituted as the defendant in Sanders' place, there was no change in the real party in interest. Consequently, the Center cannot prevail on its defense of limitations.

For these reasons, the court of appeals' judgment is

*Affirmed.*